RICHARD G. KING and HELEN K. KING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
King v. Commissioner
Docket No. 473-87.
United States Tax Court
T.C. Memo 1988-153; 1988 Tax Ct. Memo LEXIS 181; 55 T.C.M. (CCH) 598; T.C.M. (RIA) 88153; April 14, 1988. Charles F. Murray, for the petitioners. Steven R. Winningham, for the respondent. COUVILLION
MEMORANDUM FINDINGS OF FACT AND OPINION COUVILLION, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b) of the Code [1] and Rule 180 et seq. *182 Respondent determined deficiencies in petitioners' Federal income taxes for 1982 and 1983 in the amounts of $ 1,011 and $ 1,326.01, respectively. After concessions, the sole issue is whether petitioners are entitled to deduct automobile mileage expenses incurred by Richard G. King (petitioner) in commuting from his residence to his job during 1982 and 1983, under section 162(a). [2]
FINDINGS OF FACT Some of the facts have been stipulated and *183 are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided at Jackson, Tennessee, at the time they filed their petition. They filed joint Federal income tax returns for 1982 and 1983. Petitioner was employed by the Gulf Mobile and Ohio Railroad (GM&O). On August 10, 1972, GM&O merged with the Illinois Central Railroad to form Illinois Central Gulf Railroad (ICG). At the time of the merger, petitioner held seniority as a road trainman in "through freight service" and qualified as a "protected employee" under the Protective Agreement, which resulted from the merger. Under the Protective Agreement, employees were guaranteed permanent employment with ICG at a basic rate of compensation. To earn the highest possible compensation, however, employees were required to work at designated jobs and locations within the same geographical district (prior rights district) that they worked as of August 10, 1972. Because several employees could be required to bid for the same designated job, the jobs were assigned by seniority. Petitioner was a member of the Jackson and Okolona (J&O) prior rights district. *184 Road trainmen in this district worked out of the railroad terminal at Memphis, Tennessee. Since the train crews in "through freight service" were allocated (or reallocated) every six months, petitioner was required to "bid" for his specific job assignments on a recurring basis. By 1982, petitioner had acquired 25 years seniority and was able to consistently obtain jobs at the Memphis terminal. Although petitioner was not required to work out of the Memphis terminal to keep his job with ICG, he did so in order to obtain higher wages. His work records reflect that he worked out of Memphis 90 percent and 100 percent of the time in 1982 and 1983, respectively. In addition, the record indicates that, with the exception of four days in 1980, petitioner worked exclusively out of Memphis during 1980 and 1981. Likewise, petitioner worked exclusively out of Memphis after 1983. During 1982 and 1983, petitioner traveled 106 miles between his residence in Jackson, Tennessee, to the railroad terminal at Memphis, where he worked aboard a northbound freight train. He drove back to his residence after the return trip two or three days later. On their 1982 and 1983 income tax returns, petitioners *185 claimed employee business expenses for commuting of $ 3,352 and $ 3,581, respectively. [3] Respondent disallowed the entire amounts for the reason that the expenses claimed were personal expenses and were not deductible ubder section 262. OPINION Section 162(a)(2) allows a taxpayer to deduct traveling expenses, including amounts expended for meals and lodging, if such expenses are (1) ordinary and necessary; (2) incurred while "away from home;" and (3) incurred in the pursuit of a trade or business. ; . To determine whether petitioners' expenses were deductible under section 162(a)(2), a determination must be made whether he was "away from home." The determination of whether a taxpayer is "away from home" hinges on whether the employment at the distant location is temporary or indefinite. See , and cased cited therein. If the employment is temporary, the taxpayer's tax home is his primary residence; where a taxpayer's employment is indefinite, the *186 taxpayer's tax home, within the purview of section 162(a)(2), is where the indefinite job is located. . That is to say, once a job has been determined to be indefinite, the job is considered to be the taxpayer's principal employment and his tax home is where the principal place of employment is located. Expenses incurred at a taxpayer's tax home are not deductible under section 162(a)(2) because such expenses are not incurred "away from home" and are considered nondeductible, personal expenses. See section 262. Whether petitioner's employment was temporary or indefinite is a question of fact. , cited with approval in . The burden of proof is on petitioners. ; Rule 142(a). A taxpayer may discharge his burden of proof by showing that employment at the location in question was such that "termination within a short period could be foreseen." . Conversely, a taxpayer fails to carry *187 his burden of proof if the evidence indicates that the employment was indefinite, i.e., "its termination [could not have been] foreseen within a fixed or reasonably short period of time." , affd. . Even if it is known that employment could terminate within a fixed time, it is not temporary if it is expected to last for a substantial or indefinite period of time. , affd. ; . See also On the record before us, petitioners have failed to satisfy their burden of proving that petitioner's termination was foreseeable within a short period of time. Petitioner worked out of Memphis 90 percent and 100 percent of the time in 1982 and 1983, respectively. The record shows that petitioner worked almost exclusively out of Memphis since at least 1980. Even though petitioner was required to bid for his job assignment at Memphis every six months, he consistently got the job there *188 because workers with more seniority than petitioner had established jobs at other locations. Moreover, petitioner testified that he had not been displaced from employment at the Memphis terminal by any employee with greater seniority since 1981. On these facts, it is clear that petitioner had seniority and expected to remain at Memphis for an indefinite period. Petitioner contends that the lack of permanence of the job at Memphis made the job temporary. Lack of permanence, however, does not by itself make a job temporary. , affg. per curiam a Memorandum Opinion of this Court. Petitioner argues that, because the Protective Agreement mandated that he bid for his job assignments on a recurring basis, and since the assignments were determined by seniority, he had no effectual control of his work locations. Such facts, however, point to the nonpermanent nature of petitioner's employment and does not prove that his employment was temporary. This fact is not determinative that his employment was temporary rather than indefinite. . [4] The substantial *189 duration of petitioner's employment at Memphis supports the conclusion that his employment was "indeterminate in fact as it develop[ed]." . Considered in the aggregate, the record does not support a finding that petitioner's employment could have reasonably been expected to terminate within a short time in Memphis. Moreover, it was never expected that it would so terminate. Therefore, expenses incurred in traveling to his job at Memphis were personal commuting expenses and were not deductible under section 262. Respondent's determination, therefore, is sustained. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect during the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The notice of deficiency disallowed $ 3,379.50 and $ 4,856.45, respectively, for 1982 and 1983. At trial, respondent asserted that the only issue involved the deductibility of $ 3,352 and $ 3,581, respectively, for automobile mileage, and that petitioners had conceded all other expenses in excess of these two amounts. The stipulation is silent with respect to conceded issues; however, petitioners presented no evidence at trial as to these other expenses. Consequently, the Court presumes these other expenses were in fact conceded by petitioners or otherwise have been abandoned. For 1982, two other adjustments in the notice of deficiency are technical adjustments to be determined by the Court's decision on the principal issue. ↩
3. See footnote 2, supra.↩
4. . ↩